may be seated in the apartment on the next case 315-0489 people in the state of Illinois have been invigorated with the risks for you all as a penalty by Brian Cohut. Good point. You may proceed. Good morning, your honors, counsel. My name is Brian Cohut. I'm an assistant appellate defender with the Office of the State Appellate Defender and I represent Mr. Corey Wallace, the defendant in this criminal matter. Following a jury trial Mr. Wallace was found guilty of first degree murder and aggravated battery of a firearm and was sentenced to 70 years and 18 years sentences to be conserved consecutively. Over dissent his convictions were affirmed by this court on direct appeal and he filed a post conviction petition raising a number of claims. Before this the circuit court summarily dismissed this post conviction petition at the first stage of the proceedings. Before this court he raises two issues. The first issue is an actual innocence claim and the second issue is an ineffective assistance in conflict claim. Today I would like to discuss the second claim first, the ineffective assistance claim, and then turn back with time permitting to discuss the actual innocence argument. In the second issue raised on appeal Mr. Wallace alleges the ineffective assistance of trial counsel for failing to file a motion to quash his arrest. He also alleges the ineffective assistance of appellate counsel for failing to allege the ineffective assistance of trial counsel. Since his petition was dismissed at the first stage of the proceedings he only has to show that it was arguable that counsel performed efficiently and arguable that the result of the proceeding would have been different. Actually, Holly Parrish and Joe Williams were parked in a car in front of 819 Robin Lane in Joliet, Illinois. They were shot inside the car. A crowd of people gathered around the scene of the shooting. Approximately two minutes after the call was put out to the police, Officer Jeffrey Stubor showed up at the car. He guarded the vehicle and he said, he testified, he was first officer on the scene and he stayed near the car. He testified that he, and this is a quote, could hear people talking throughout the crowd and they were making mention that the individual responsible for that, the shooting, was a person that they said or identified as Mr. Wallace. He did not identify any particular member of the crowd that made the statement. His testimony indicates that based on these random anonymous statements of the crowd, Officer Stubor arrested Mr. Wallace. The only contentious issue here is whether counsel performed efficiently for not filing a motion to quash arrest. The state does not dispute that Mr. Wallace was arrested and it does not argue that had counsel not performed efficiently, there was no prejudice. So the only issue here really is whether the record affirmatively shows that the police had probable cause to arrest Mr. Wallace. Because the statements here were based on identified members of a crowd of people that were gathered at a shooting, they are akin to anonymous statements. It's well established that unverified anonymous statements cannot establish probable cause. Here the only information that Stubor has, there was a bunch of people milling around near the scene of the shooting and he overheard persons in the crowd saying that Mr. Wallace did it. He did not identify any particular member of the crowd who said it. There's no indication that any member of the crowd actually witnessed the shooting. There's no indication of any other corroborating evidence as to what the shooter was wearing, where the shooter came from, what kind of gun was used, where the shooter went. It was solely based on these statements of the anonymous members of the crowd saying that Wallace did it. Therefore, it is at least arguable that counsel performed efficiently by failing to file a motion to quash his arrest. Now the state argues that Stubor had probable cause to arrest Mr. Wallace based on what subsequently the witnesses testified to at trial. But there's no indication in the record that any of these witnesses were members of the crowd or that they spoke to the police prior to Mr. Wallace's arrest. In fact, the record shows the opposite. Satella Bridges said that she did not tell the police that Mr. Wallace was the shooter. Amanda Winters testified that she refused to speak to the police. And Tanya Dandridge said that she was not comfortable talking with the police at the scene. Therefore, her statement was taken later at the police station. No one else was able to identify the shooter and the record just does not support the state's argument here. Consequently, the police lacked sufficient probable cause to arrest Mr. Wallace. Trial counsel was arguably ineffective for failing to file this motion to quash his arrest and this court should remain for further proceedings on that issue. Turning then to the first issue that Mr. Wallace raises in his brief, whether he stated the gist of a claim of actual innocence. Mr. Wallace's petition was dismissed at the first stage. So all he has to show is that it was arguable that he showed actual innocence. That is, it was arguable that the evidence he presented and two affidavits that he attached to his petition was new, arguable that the evidence was material, and arguable that the evidence probably would have changed the result on retrial. Initially, the state argues that, oh, excuse me, in support of his claim, Mr. Wallace supplied two affidavits. One of them was from Adrian Ellis. Adrian Ellis averred that he spoke with Conley Ratcliffe in prison and Conley Ratcliffe admitted to the shooting and told Ellis that he had apologized to Joe Williams, the victim of the aggravated battery of the firearm charge, that he apologized to Joe Williams for shooting him in the arm. He also supplied an affidavit from Darius Foster, and Darius Foster averred that he saw Conley Ratcliffe running from the scene of the shooting shortly after the shots were fired with the same type and color of firearm that was used in the shooting. The state argues that neither of these affidavits should be considered substantively. It argues essentially that Foster's affidavit was incredible. But that's not a question for this court or the circuit court at the first stage of the proceedings. That's something to be fleshed out in the second stage, if counsel speaks with Mr. Foster, or at a third stage evidentiary hearing where Foster will be placed on the stand. It also argues that the evidence contained in Ellis' affidavit would be inadmissible because it amounted to hearsay. But that question was recently decided against the state in People v. Allen, where the court said it's not really concerned with the hearsay contents of an affidavit at the first stage of the proceedings. That's something to be discussed in later proceedings under the Post-Conviction Hearing Act. As to whether the affidavits arguably establish actual innocence, I would like to discuss whether they were new and material first, and then move on to whether there were retrials. It is arguable that there's a probability that a retrial would have yielded a different result. Now, the state does not contest that Ellis' affidavit was either new or material. So then turning to Mr. Foster's affidavit, the evidence contained in Mr. Foster's affidavit that he saw running from the scene of the shooting with a silver gun in his hand was new evidence. There's no indication of any testimony at trial that anybody saw anybody with a gun running from the scene of the shooting. Although Mr. Ratcliffe told his attorney that Foster was present around the scene during the time of the shooting, there's no indication that Mr. Wallace knew that Foster saw Connie Ratcliffe running from the scene with a gun. Therefore, the evidence should be considered new. And again, it's just a standard here, it's a question of whether it's arguably new. The evidence contained in Foster's affidavit was arguably material. As I stated previously, nobody saw anybody running from the scene with a gun. Therefore, that would have been material evidence in any sort of proceedings. Finally, given these two affidavits, it is at least arguable that the result of a retrial probably would have been different. The issue in this case is one of conflicting identification. This conflicting identification was only supported by circumstantial evidence. Affidavits showing that Connie Ratcliffe confessed to Adrian Ellis, admitted to the shooting, and said that he apologized to Joe Williams for shooting him in the arm, and another affidavit saying that Connie Ratcliffe was seen running from the scene with the type and color of firearm that was used in the shooting, would have been incredibly important in this case. And again, the question here is whether he presented an arguable claim of factual innocence. Therefore, the circuit court should have moved this petition on to the second stage. And if there are no questions, Your Honors. Was there an affidavit from Joe saying that he did speak to Ratcliffe? Mr. Williams made a statement to an assistant state's attorney early on in the proceedings saying that somebody came and admitted to shooting him and apologized for shooting him in the arm, that it was not the defendant. But he refused to identify the person that made that statement. That was very shortly after the shooting, maybe within, I believe it was two months, Your Honor. I think that was in May and the shooting was in March. Now, given Ellis' affidavit, it's reasonable to assume that it was Connie Ratcliffe that approached Joe Williams and apologized for shooting him in the arm, just as he did the same thing to Mr. Ellis. And what Mr. Williams also said, that it was not Mr. Wallace who apologized for shooting him. For the foregoing reasons, Your Honor, Mr. Wallace respectfully requests that this court remand us to pause for our second stage post-conviction proceedings. Thank you. Thank you, Mr. Clark. Mr. Canova. With respect to the defendant's post-conviction petition, he raises claims trying to assert actual innocence. If what was stated this morning, with respect to, first of all, with respect to the contents, it seems to me as though the contents here, I guess the question that first comes to my mind is, do the contents of these affidavits actually establish actual innocence? Or do they merely question the sufficiency of the evidence? Do they merely raise the question, do they merely try to contradict the evidence? If it's the latter, it's totally insufficient to raise a claim of actual innocence. I think that what these affidavits do at best is really try to take an attack, or really raise more of a question of reasonable doubt than anything else. When we take a look at the standard, indeed the standard here is whether or not the defendant's petition basically states the gist of a constitutional claim. Now, to me anyway, if you accept counsel's argument, simply by stating, for example, in the second issue that counsel is ineffective, he stated the gist. If you take a look at what he says with respect to the first issue, simply because somebody claims that somebody told them something, they stated the gist of a claim of actual innocence. I suggest to court that how these issues are to be analyzed, indeed the ultimate question is, has he stated the gist? The people believe he has not. But in analyzing that, what I think you have to do is you have to look at the various, what is being alleged and what standard is used to judge that. In other words, when you are analyzing whether or not this is newly discovered evidence, you have to look at the rules that have been developed with respect to newly discovered evidence of actual innocence in order to judge whether the defendant has stated the gist of a constitutional claim. I base my argument primarily on People v. Brown that was cited in my case, which is one of my Supreme Court cases in which they tried to determine whether or not the trial judge had properly dismissed, at the first stage, a claim of ineffective assistance. And they had to determine whether or not the defendant's allegations in this petition stated the gist. Well, in determining that, what did they do? They looked at Strickland. And they analyzed the case under the standards of Strickland. And that's all that my brief has attempted to take and say, is when you're analyzing whether this defendant has stated the gist, what we have to do is we should look at the case of People v. Edwards, which is a case similar, albeit not a first-stage dismissal. It's a question of whether or not the defendant should have been granted leave to file a successive petition. But in determining whether or not that was proper, what the court did is the court looked at the affidavits. And they analyzed the affidavits to determine whether or not they satisfied the standards of being newly discovered evidence and whether evidence of actual innocence. And I think if you analyze the case, this case, based on Edwards, I think this court will conclude, number one, that with respect to Foster's affidavit, it was not newly discovered. Foster is really the key here. It's not so much what he knew, but the fact that Foster was a potential witness. And basically, from what we have here is we have an affidavit from the defendant saying, well, I gave Foster to my counsel. I gave him the name. Foster was a known quantity. Granted, we don't know what Foster knew or what Foster said or if Foster was even contacted by counsel. But at least based on Edwards, Edwards basically had the same thing, that these witnesses weren't called and that the names were given to counsel. And the Supreme Court said, well, hey, we have to presume that counsel contacted the witness and the witness had nothing of use for counsel to take and use in trial. And so therefore, basically, this affidavit fails to state the gist of a constitutional claim. And it's the same here. As I said, Foster was known. Foster was a known quantity. He was a known witness. He was identified, but not used. If we even take a look at his allegations, his allegations, which, by the way, a trial court can review. A trial court, in determining the sufficiency of a petition to the first stage, can look at the trial record, can look at the reported proceedings, and can look at what even the appellate court has done with the case, if the case has gone up on appeal. And in this particular situation, if you take a look at the allegation and you look at the evidence that was induced, basically, Foster's affidavit, at best, doesn't raise a question of actual innocence, but really simply questions reasonable doubt. His affidavit says that after the shooting, he saw Radcliffe running with a gun. Well, that doesn't mean that Radcliffe did the shooting. That doesn't mean that the defendant is actually innocent. All that we know from this is that Radcliffe had the gun after the shooting. It doesn't mean that the shooter, in this case the defendant, did not go behind the building, had the gun to Radcliffe, and then Radcliffe was then later seen running with the gun. Then you also have to consider the second affidavit, which now, after Allen, says that even though it would have been hearsay, but in terms of these proceedings and determining whether there's a gist of a constitutional argument, that you can consider that. Now we have the affidavit of Ellis saying that Radcliffe admitted and apologized to shooting one of the individuals, and in fact, that individual had told police, hey, somebody came up and apologized to me. And now you have more than, I guess, just a question of doubt or weight of evidence, but you would have evidence of innocence if you take these as true. If you accept these as true, what you have here is you have, first of all, the facts that are related are facts that are already known. These facts were known, as Your Honor pointed out, were known prior to trial. Now I'm not saying that somebody has necessarily put something in an affidavit that could be conjured up and all these facts could be put in there, which is obviously not something that we consider at this first stage. I understand that. But we take a look at the fact that this conversation happened in 2008. He supposedly learns two years later in 2010 that the defendant was tried and convicted of this, but it's not until 2012 that he actually says anything. So what we have is we have four years after the conversation, two years after the defendant is convicted, and we have this individual all of a sudden coming forth and providing this affidavit, as well as the fact that what we also have is, yes, indeed, they make this comment that Radcliffe said that he apologized for the shooting, et cetera, but what we have rebutted by this is the fact that in trial of evidence, we have Woods who testified as to what had happened, that Radcliffe had left the apartment. There was only three people left. Woods, the defendant, and I can't remember the third individual's name. I think it might have been Johnson, if I'm not mistaken. And then what happens is shortly after Radcliffe leaves, a phone call is received by the defendant indicating that the victim is entering the projects. This phone call came from Radcliffe. That was factually corroborated by the phone, not only of Radcliffe, but also of the defendant, that he received a telephone call shortly before the shooting. Well, if that happened, there's no indication that Radcliffe was anywhere near or would have been anywhere near to be able to obtain a gun to do anything. Factually, the record, in my estimation, rebuts. The hearsay statement, even if it's accepted as true, I think it rebuts those comments that are in there. So I think that irrespective of the hearsay nature and irrespective of whether or not at a second stage, we could take and show that whether or not this would be admissible, because this was an issue, by the way, which I did not argue in my brief because it obviously is not really relevant at this stage, but this was an issue that was raised on a direct appeal to this court originally, and this court found the issue waived because it had not been objected to. And then plain error had not been argued, et cetera. So there are other things that are going to obviously be developed should this case go back, but at least on the pleadings, I believe that this does not necessarily establish a freestanding claim of actual innocence. I think it is rebutted by the record, Ellis' affidavit, as well as the foster's. And when these affidavits are judged under the standards set forth for actual innocence, I think that the trial judge in this case properly dismissed this petition at the first stage, finding it frivolous and plainly without merit. Now, with respect to the second issue, with respect to ineffective assistance, the defendant states in the first sentence of his reply group that the state does not argue the defendant was not seized, or if he was seized, the evidence would not have been suppressed or the outcome of the proceeding would not have been different. I did not argue that because it is not relevant at this point. All this stuff, as counsel has pointed out on some of the other things, I think is more appropriate for a second stage. The question is, does this allegation sufficiently allege the gist of a constitution in respect of ineffective assistance? And, again, analyzing the case based on Strickland, no. We don't think that this alleges the gist of a claim, primarily because of the fact that in this particular situation, you have to look at the totality of the evidence. Aside from what Stubbler knew, it's also what the police working as a unit knew. And I do take issue with the factual statement. The Bridges and Parrish both testified that they had spoken to police shortly after the offense had occurred, shortly after the shooting. And I believe that they indicated to police. I believe that the case law is clear, that is the combined effort of police, and the police don't have to communicate the information to each other, and whether or not it's been communicated from one officer to another is not necessarily required. And because of the fact that you look at the totality of what the police knew, was there probable cause to believe that the defendant committed this crime? Yes, there is. And that is what is used to determine whether or not the arrest was proper. And the fact that information is not necessarily communicated, it's the collective knowledge, whether or not this evidence has been told to the arresting officer is not determinative of whether or not the arrest is valid. And so under the circumstances, the people do not believe that in this particular case, that these allegations state the gist of a constitutional claim, and that the trial judge properly dismissed this petition at the first stage. If there are any questions, I'd be more than happy to respond. If not, we ask this court to affirm. I don't see any questions. Thank you, Mr. Darnesia. Thank you. Mr. Collett for rebuttal. Just briefly, the state argues with regard to the suppression issue that Parrish and Bridges spoke to the police shortly after the incident. Darnesia Parrish was unable to identify the shooter, so had she even spoken to the police, had she even spoken to Stuber, she could not have stated that Mr. Wallace was the shooter. So Bridges specifically testified that she did not tell the police that Mr. Wallace was the shooter. Therefore, neither of their testimonies contradict the statements made in Mr. Wallace's petition. The state also argues that even if the statements of these other individuals were not communicated to Stuber, Stuber could still have arrested Mr. Wallace based on what the collective officers knew, what the officers collectively knew. But Stuber specifically testified that he arrested Mr. Wallace based on the hearsay statements of the crowd. But it doesn't matter. I mean, if he's got probable cause, assuming someone has probable cause to arrest him based on this legal fiction, that it's the collective knowledge of the police department, what that officer's subjective knowledge was, it's almost like a pretextual stop, you know. As long as there's a legal basis to do it, it doesn't matter what was going on inside that officer's head. Even assuming that legal basis, Your Honor, there is no indication on this record that contradicts Mr. Wallace's statement. There is no indication on this record that these witnesses who testified subsequently that Mr. Wallace was the shooter spoke to police or spoke to police and told them that Mr. Wallace was the shooter. And Stuber specifically stated he arrested Mr. Wallace based on these statements of the crowd of people saying, Wallace did it, Wallace did it, Wallace did it. None of these people were part of that crowd. None of these people spoke to the police or told them that Wallace was the shooter, contemporaneously with his arrest. You know, just assuming that that legal fiction is accurate. I think it's more about whether the police are in collaboration together. Here, Stuber, he's babysitting the vehicle. The other officers are out searching for whomever, searching for witnesses, other victims, for somebody running around with a gun in his hand. Stuber's just sitting there babysitting the vehicle. There's no indication that he's collaborating with the other police officers in this investigation at that time. But again, even assuming... The law is whether he did or didn't, he's deemed to have the knowledge that the cop two blocks away has. Well, I don't know right off the top of my head, but even assuming that that's true, nobody spoke to the police prior to his arrest. What you're saying is that at the time that the arrest was made, that none of the officers had grounds to make that arrest. I think that's what has to be established. That's correct, Your Honor. And that's Mr. Wallace's allegation here. Nobody spoke to the police prior to his arrest. And that's borne out by the record. And what's more important is the record does not contradict Mr. Wallace's statement that nobody spoke to the police prior to his arrest. And in fact, it supports his allegations here because nobody spoke to the police prior to his arrest. Let me... On the ineffective assistance, you know, the motion, at this stage, again, what's your position as to whether we need to look at the first stage and the likelihood of success of such a motion? All Mr. Wallace has to show is that it was arguable that the motion would have been successful and arguable that the result of proceeding would have been different. It could have been as opposed to probably. I don't mean... It's not even as much as could have been. It's simply just arguable. It's not probably. It's certainly not probably. He merely has to show that it's arguable that counsel performed efficiently. And as he's set forth a claim that he was arrested without probable cause. So if he's arrested without probable cause, certainly the motion's going to be successful. And then there's your question of what evidence would have been suppressed and whether it was arguable that he was prejudiced based on the failure to suppress that evidence. The ineffective assistance of counsel argument is ineffective assistance of appellate counsel? He raises both. He raises ineffective assistance of trial counsel for failing to file this motion to quash harassment and suppress evidence, and ineffective assistance of appellate counsel for failing to allege trial counsel's ineffectiveness. Was your office... It's just, yeah, it's just getting it through the... Was your office representing him on direct appeal? No, he was represented by a private counsel on direct appeal. I don't recall counsel's name, but it was private counsel. Is there migraine in playing whether you're arguing... Whether I should be here in the first place. And if there are no further questions, Your Honor? One is, if you're on the actual instance claim, let's say we go to a third stage and we rip the fellow out of prison that was supposedly the shooter to testify, what do you think is going to happen? I can't speculate as to what... I would imagine he would either plead the fifth or he would say, I wasn't there, I had no involvement in it whatsoever. But, again, that's something that can be flushed out at the third stage. It could even come out at the second stage. A defense counsel, if appointed for Mr. Wallace, can go meet with Mr. Ratcliffe if that's possible or if Ratcliffe will meet with him and determine what his testimony would be at the third stage. Justice Schmidt knows the facts a lot better than I do, I think, because he wrote the last decision. He did, that's correct, yes. Let me understand the facts. The officer says, testified. I arrested him based only on the grumble of the crowd, the roar of the crowd. But at that point, they didn't have the do-rag, they didn't have the gunshot residue on his hand. Was he arrested at Davenport's apartment or not? No, he was outside. I believe he was in between two residences. I don't remember specifically. So there's no discovery of the mask that was inside Davenport's apartment? Potentially, but he was arrested with the key to Davenport's apartment. That key obviously ties him to Davenport's apartment. If that evidence is suppressed, then that key doesn't come in and you have a harder time tying Mr. Wallace to Davenport's apartment. And the DNA on the mask in Davenport's apartment, one of three? One of three, that's correct, Your Honor. Has it ever been analyzed to see if Radcliffe's DNA is there? I don't think it was. As far as this record indicates, it was not. Thank you. Thank you. Okay, thank you, Your Honor. Thank you. Mr. Kvaal, thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible. And right now, I think we stand in recess until 1 p.m.